EXHIBIT B

Electronically FILED by Superior Court of California, County of Riverside on 12/16/2024 01:27 PM
Case Number CVRI2407210 0000114147257 - Jason B. Galkin, Executive Officer/Clerk of the Court By Kristen King, Clerk

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (SBN 295032)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (SBN 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| AUBREY CARILLO | Case No. CVRI2407210 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| VGW HOLDINGS U.S., INC. and VGW U.S., INC. | |
| Defendants. | |

COMPLAINT

1

## **NATURE OF THE ACTION AND FACTUAL ALLEGATIONS**

2    1.    Plaintiff brings this action under California's Unfair Competition Law, Bus. & Prof.

3    Code § 17200 *et seq*., and the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.,

4    seeking public injunctive relief to discontinue operation in California of the illegal gambling

5    website, ChumbaCasino.com.

6    ***Introduction: The Problem of Online Gambling***

7    2.    The online gambling industry is profiting from gambling addiction the same way the

8    Sackler family once profited off of opioids.  For decades, the proportion of Americans diagnosed

9    with pathological gambling held steady at less than 1 percent, with 7 million Americans believed to

10   be suffering from a gambling addiction at an annual "social cost" of $14 billion.  But those

11   numbers have skyrocketed with the advent of online gambling: from 2021 to 2022, there was a 45

12   percent increase in the number of calls, texts, and messages to the National Problem Gambling

13   Helpline.

14   3.    According to one study, up to 30 percent of problem gamblers have attempted

15   suicide, while a larger percentage of such individuals reported having suicidal ideations.

16   4.    The fallout is not limited to gamblers.  It has a ripple effect that negatively impacts

17   spouses, partners, children, and employers.

18   5.    The United States may be on the cusp of an explosive growth of gambling addiction

19   akin to the opioid crisis, fueled by online access to gambling websites.  Gambling disorder can take

20   as long as five to seven years to develop.  During the last five years, online gambling websites have

21   proliferated with no way to reduce the ensuing harm.  This shift is already evident with the

22   gamblers who seek treatment, who tend to be younger, predominantly male, and raised on smart

23   phones.

24   6.    Treating online gambling addiction poses challenges that are different from other

25   forms of gambling.  For an individual with substance use disorder, safety measures like disposing

26   of all alcohol or drug paraphernalia or avoiding triggering social events are key to treatment.

27   Things are not so clear-cut when treating digital gambling because for most people, mobile devices

28

have become a necessity of life.  So, it's not a question of avoiding the drive to the casino, but instead, a constant struggle to avoid the temptation to gamble from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive a signal.  Furthermore, unlike the billions of dollars of federal funding dedicated to alcohol, tobacco and drug addiction programs, there are no federal funds allocated to support problem gambling services.

7.     To make matters worse, although the casino gaming industry is one of the most regulated businesses in the United States, online gaming websites like ChumbaCasino.com are unlicensed and unregulated.  A gaming license is a privilege that requires, among other things: (1) meeting state standards; (2) background checks on company officers and directors; (3) adherence to responsible gaming programs; (4) anti-money laundering measures; and (5) myriad other requirements concerning data privacy, security, and responding to customer complaints. Defendants dodge all of these requirements.  As one gambling treatment provider warned, "[u]nregulated platforms like Chumba Casino can pose significant risks for players struggling with gambling addiction.  The lack of proper safeguards often exacerbates financial and emotional stress, making it harder for individuals to regain control."

8.     Defendants also deprive state and local governments of tax revenues that legitimate, regulated casinos pay.

9.     The bottom line is that ChumbaCasino.com lets people play online casino games and wager real money while skirting regulation and licensing, offering inadequate player protections, and siphoning revenue from state governments.

10.     It should come as no surprise, therefore, that Defendants have faced legal challenges in several states.  Regulators in Idaho, Washington, Montana, Michigan, Delaware, and Connecticut have all acted against Defendants and their related entities for unlicensed gambling activities.

11.     For example, the Connecticut Department of Consumer Protection issued a cease-and-desist letter earlier this year, accusing Defendants and their related entities of violating state

gambling laws.  *See* <u>Exhibit</u> 1.  In response, Defendants discontinued operation in the state. Similarly, the Michigan Gaming Control Board banned ChumbaCasino.com in the state.  *See* <u>Exhibit</u> 2.  More recently, in Delaware—where both Defendants are incorporated—the Department of Safety & Homeland Security, Division of Gaming Enforcement, issued a cease-and-desist letter to Defendants demanding that they take immediate action to ensure that people located in Delaware are not permitted to gamble on the website.  *See* <u>Exhibit</u> 3.

12.    Against this backdrop, it is a breathtaking display of chutzpah and lawlessness for Defendants to operate in California, a state with some of the strictest gambling laws in the nation. Those laws were enacted to minimize the social costs of gambling.  In California, it is illegal to operate and offer online gambling casinos, including websites that offer slot machines, blackjack, roulette, and poker.  *See generally* Cal. Penal Code §§ 330 *et seq*.

13.    Likewise, gambling contracts are void as a matter of public policy.  Parties cannot lawfully agree to engage in gambling any more than they can lawfully agree by contract to engage in child labor, the sale of controlled substances like cocaine, or participate in a murder-for-hire scheme.  In this regard, California has a fundamental public policy against unlicensed and unregulated gambling.

1    ***Defendants Operate A Gambling Website***

2        14.    The very name of the website "Chumba Casino" is a clear reference to the purpose

3    of the website: gambling.

4        15.    As soon as users log onto the website, the first thing they see is an array of colorful,

5    digital slot machines, along with information about the user's gambling balance near the top of the

6    screen:



16.    Just like one would see on the floor of a brick-and-mortar casino in Las Vegas, the digital slot machines come in a wide variety of styles and themes, such as the examples shown below:





17.     All of the slot machines operate in essentially the same manner.  The primary difference between one slot machine and the next has to do with the imagery and theme of the game; other than that, each slot machine is the same in all material respects inasmuch as they all involve gambling.

18.     Another part of the website is dedicated to "Table Games," like poker, blackjack, and other games typically seen on a casino floor:



19.     Once any of these Table Games are accessed, the website digitally replicates a casino table game, much like it would appear in a brick-and-mortar casino.

20.     When playing blackjack, for example, the user first bets from a pile of chips with a value that corresponds to the user's account, hits the "Play" Button to reveal the first cards, and then choses whether to "double," "stand," or "hit":

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21        21.      One of the most insidious aspects of ChumbaCasino.com is that despite the clear

22   purpose of the website, the word "gambling" is never used on the website.  Instead, Defendants

23   gaslight users—including vulnerable populations who struggle with gambling addiction—by using

24   euphemisms like "social gaming" and "sweepstakes."  Unlike any legitimate "sweepstakes,"

25   however, it is common for individual users in California to lose thousands of dollars gambling on

26   the website.  Indeed, at the bottom of the ChumbaCasino.com website there is a miniscule

27   hyperlink that few are likely to see titled "Responsible Social Gameplay."  Clicking on that tiny

28

link leads to warnings of the "potential risk that can be associated with online gameplay [i.e., gambling] if you don't remain in control."

### Defendants Have Scaled Up, On A Massive Scale, An Old Tactic That Criminals Have Used When Trying To Evade State Gambling Laws

22.     From the early days of the Internet, criminals have attempted to evade gambling laws by claiming their Internet-based games are just a "sweepstakes," and that no money is wagered because customers are only offered an opportunity to enter the sweepstakes as a free "bonus" for purchasing something else.  State law enforcement officials in the United States have repeatedly determined that such tactics are a pretext and constitute illegal gambling.

23.     For example, in 2011, three individuals—including a Fall River, Massachusetts City Counsil member—were indicted and charged with various gaming charges in connection with the operation of two Internet cafés.  The defendants unsuccessfully argued that players were only paying for Internet time and that any gambling that occurred involved legitimate sweepstakes offers.  The Massachusetts Attorney General stated unequivocally that this conduct constituted illegal gambling.

24.     More recently, an individual in Mississippi was convicted of racketeering and gambling charges in connection with an Internet café where—like here—customers could play simulated games that resembled gambling programs, such as slot machines, keno, and poker.  Customers needed a "sweepstakes" code to play the game, but customers could not purchase a sweepstakes code outright.  Instead, customers received sweepstakes codes by purchasing something else in the store, such as food or phone minutes.

25.     Here, Defendants' business model is a scaled-up version of the tactics used by the criminal enterprises described above.  Defendants claim that its gambling operations are legitimate sweepstakes, based on a purported distinction between virtual coins called "Gold Coins" and "Sweeps Coins."  The slot machines, poker tables, and other games of chance on the website can be played with either "Gold Coins" or "Sweep Coins," and they both function like casino chips.

26.    When a player first starts up an account on the website, they are given a free initial allotment of virtual Gold Coins, and a small number of virtual Sweeps Coins.  These coins are required for gameplay.   The chance for a player to win more coins or lose their bet is a fixed random chance and not skill-based.  All games require a "minimum bet" of coins before a player can play.  If a player runs out of coins or has less than the amount required for a minimum bet, they cannot play the game until they replenish their supply.

27.    When gambling in "standard mode" with Gold Coins, a player can only win or lose Gold Coins, which can be used to place wagers on the various games.

28.    When gambling with Sweeps Coins, a player can win or lose Sweeps Coins, which can be used to place wagers on the various games, and unlike Gold Coins, can also be exchanged for prizes and money.

29.    Players can use real currency to purchase additional virtual Gold Coins through the website, which prompts players with a message to buy more Gold Coins when they run out.  In this way, the purchase of Gold Coins is like what happens when a player purchases casino chips in a brick-and-mortar casino, which can then be used to place wagers at table games.

30.    Players can buy different packages of virtual Gold Coins for real currency, ranging from $1 for 200,000 Gold Coins to $200 for 120,000,000 Gold Coins.

31.    By far, the most common way for users to obtain Sweeps Coins is to purchase Gold Coins.  The more Gold Coins a user purchases, the more Sweeps Coins the user also receives.  So, in effect, when a person buys Gold Coins, they are also buying Sweeps Coins as part of a package.

32.    Defendant claims that no purchase is necessary to buy "Sweeps Coins" and that they are just a "bonus" added to the purchase of Gold Coins, but the reality is that generally, both coins must be purchased, and Defendant will only sell them together as a package.  As noted above, this is a tactic that criminal gambling operations have long deployed in the past to evade gambling laws by claiming that the gambling is "free."

33.    Defendants also claim that no purchase is necessary to buy "Sweeps Coins" because it offers a "daily bonus" of 1 Sweeps Coin.  However, the "daily bonus" and other gimmicks that

Defendants use to provide occasional, small amounts of Sweeps Coins reinforce that ChumbaCasino.com is a gambling operation, because Defendants are utilizing the same tactics that brick-and-mortar casinos use to tempt players to gamble more. For instance, brick-and- mortar and online sportsbooks often provide promotional "free wagers" for sports bets in jurisdictions where sports gambling is legal. Just like the brick-and-mortar casinos and online sportsbooks, Defendants do not expect website users to limit their gambling to a few, complimentary Sweep Coins. It is a loss-leader intended to induce more gambling profits for Defendants.

34.     Regardless of what mode a player is using, none of the games depend on any amount of skill to determine their outcomes – all outcomes are based entirely on chance.

35.     Defendants maintain win and loss records and account balances for each consumer. Once the algorithms determine the outcome of a spin and Defendants display the outcome to the consumer, Defendants adjust the consumer's account balance. Defendants keep records of each wager, outcome, win, and loss for every player of the games.

### *All Purported Contracts With Defendant Are Either Non-Existent Or Void*

36.     Plaintiff has no contract with Defendants because neither is defined as a "related party" in the Terms and Conditions. Courts do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there. Any ambiguities on this issue are construed against Defendants.

37.     Even if Defendants were a party to the Terms and Conditions, they are void and unenforceable. First, in California, a contract "is not lawful" if it is "contrary to an express provision of law," or "[o]therwise contrary to good morals." Cal. Civ. Code. § 1667. Gambling contracts have long been deemed to fall within the ambit of this rule, and thus are void *ab initio*.

38.     Parties cannot lawfully agree to engage in gambling any more than they can lawfully agree by contract to engage in child labor, illicit drug sales, sex trafficking, or other crimes.

39.     Second, the choice of law provision in Chumba's Terms and Conditions purports to require application of Delaware law. Although that choice of law provision is unlawful,

unconscionable, and unenforceable, even if the Court determined that Delaware law governs, then the contracts are void for the same reason: gambling contracts are illegal and void *ab initio* in Delaware.

40.     The Terms and Conditions also have a venue provision that purports to require that any dispute be submitted exclusively to the courts in Malta.  This provision is void for the same reasons alleged above.  Also, the provision is an unconscionable and unlawful tactic to deter enforcement of state gambling laws.  Defendants in this action have no connection to Malta whatsoever—they are both Delaware corporations with their principal place of business in Colorado.

41.     The Terms & Conditions describe no relationship between Defendants and Malta.

42.     Most of the employees of VGW-related entities are employed in one of two offices in Australia, including employees involved with finance and tax, legal matters, operations, and software engineering.

43.     All of the companies' CEOs and executives are in Australia.

44.     After the offices in Australia, the locations with the second and third highest numbers of employees are Krakow, Poland and Manila, Philippines.

45.     California has a greater interest in this matter than either Delaware or Malta because Defendants' conduct violates California criminal laws, deprives the state of gambling revenues, and causes California citizens to suffer the social consequences of unregulated gambling.

46.     This lawsuit also involves non-waivable and fundamental public policies affecting Californians.

47.     In contrast, Maltese courts have no interest in applying Delaware law (or California law) to conduct and harms that occur in California, and in a dispute with Defendants who have no direct connection to Malta.

## THE PARTIES

48.    Plaintiff Aubrey Carillo is a resident of Indio, California.  Plaintiff lost money on Defendant's illegal gambling website within the last three years.  As a result, he suffered an injury in fact resulting in the loss of money and/or property.

49.    Defendant VGW Holdings U.S. Inc. ("VGW Holdings") is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 2002, Boulder Colorado, 80302.  VGW Holdings also maintains an office at 442 Post Street, Suite 900, San Francisco, CA 94102.

50.    Defendant VGW U.S. Inc. ("VGW U.S.") is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 2002, Boulder Colorado, 80302.  VGW U.S. also maintains an office at 442 Post Street, Suite 900, San Francisco, CA 94102.

51.    Both Defendants have stated in court filings that they "specialize[] in the development and publication of online casino-themed social games," including the gambling website at issue here, ChumbaCasino.com.

52.    Defendants work in conjunction with at least three other related entities—VGW Malta Ltd., VGW Group, and VGW Games—and participate and support operation of the website in the United States and processing U.S. gambling winnings.  None of the Defendants are authorized in California or the United States to offer gambling to the public.

53.    Through the website and its office in San Francisco, each Defendant conducts business in California.

## JURISDICTION AND VENUE

54.    This Court has personal jurisdiction over the parties because Plaintiff resides in California and submits to the jurisdiction of the Court, and because Defendants has systematically and continually conducted, and continue to conduct, business in this State, and maintain an office and an agent for service of process in this State.

55.    ChumbaCasino.com is an interactive website used for commercial purposes.

56.    ChumbaCasino.com is accessible and made available to California residents.

57.     It was foreseeable that California residents would use the ChumbaCasino.com website because Defendants knew that California residents frequently gamble on the website and that they will continue to do so.  Defendants know that Californians use the website because there is widely available technology that allows websites to detect the location of a website visitor based on the website visitor's IP information, including the state in which they are located.  Defendants utilize this technology on their website and block users from certain states.  However, Defendants made an affirmative decision not to use that technology to block California website visitors because that would prevent Defendants from profiting from gambling in California, the fifth largest economy in the world.

58.     Defendants' General Counsel Michael Thunder has stated in court filings that "VGW Group maintains electronic financial reporting systems that contain the total amount of purchases by users of VGW Group's Games, which are maintained in the ordinary course of business."  Defendants can and do use this information to determine how many gamblers who visit the website are from a given state.  These financial reporting systems therefore provide another reason that Defendants knew that many Californians gamble on ChumbaCasino.com, and knew that it was foreseeable that many Californians would continue to do so.

59.     ChumbaCasino.com appeals to, and profits from, an audience in California, and California residents form a significant portion of the website's customer base.

60.     Defendants foresaw and intended Californians to use ChumbaCasino.com because the privacy policy of the website includes a section specifically directed at "Residents of California," which provides information tailored to Californians about their privacy rights.  The ChumbaCasino.com privacy policy does not single any other state in this manner.

61.     ChumbaCasino.com's Terms and Conditions purport to prohibit the use of the website from four states.  California is not one of those prohibited states.

62.     Venue is proper in this Court pursuant to Civil Code §§ 395 and 395.5. Defendants conduct business in this County and throughout the State of California

63.    Federal court subject matter jurisdiction over this action does not exist.  Plaintiff asserts no federal question or violations of federal law in this Complaint.  Plaintiff's individual claims do not exceed $75,000.

**FIRST CAUSE OF ACTION**
**Unlawful Business Practices in Violation of the Unfair Competition Law**
**California Business and Professions Code §§ 17200 et seq.**

64.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65.    Plaintiff is a "person" within the meaning of Cal. Bus. & Prof. Code § 17201 because he is a natural person.

66.    Plaintiff has standing under the UCL because he suffered an injury in fact and lost money or property because of Defendants' unlawful and unfair conduct.  Players pay valuable consideration in the form of real money to purchase virtual casino chips (called "coins" on the website), use those chips to try to win prizes in the form of additional free plays, and are awarded these prizes based on chance outcomes.

67.    By hosting and facilitating the unlawful online gambling website at issue here, Defendants engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200 by committing unlawful and unfair business acts and practices.

68.    Defendants' operation of the ChumbaCasino.com website violates the unfair prong of the UCL.

69.    California aggressively regulates all forms of gambling.  One reason it does so is to prevent consumers from being cheated by professional gambling operations, to minimize the social harm of gambling, and to generate state revenue.

70.    Because ChumbaCasino.com operates as if it is not subject to gambling regulations, the website does not comply with all the regulations that govern gambling operations.

71.    Notably, while any legitimately operated casino must randomize its results, ChumbaCasino.com does not randomize their results the way regulated casinos do.  Instead, social casinos tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues).

72.     In other words, social casinos cheat players out of a legitimately randomized gaming experience. Not only can players never actually win money, but their financial losses are maximized by deceptive gameplay tweaks that would never be allowed in a legitimate (*i.e.*, licensed and regulated) casino.

73.     The utility of the Defendants' conduct is outweighed by the gravity of harm to the public, because the social costs of gambling are well known and adversely affect the public interest.  Defendants' operation of ChumbaCasino.com offends an established public policy that gambling is generally illegal, with narrow and specific exceptions for certain regulated gambling operations.  Defendants' operation also unfairly makes money from California consumers by evading the strict regulation and control of California's gambling statutes.

74.     Operating an unlicensed and unregulated gambling operation—or attempting to exploit perceived loopholes in gambling laws—is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

75.     The social cost of gambling is substantial, and the injury caused to consumers is not outweighed by any countervailing benefits to consumers or competition.  The conduct at issue here provides no benefits to consumers or competition.  Defendants avoid California's extensive gambling regulations that reputable and licensed gambling operations must comply with, and withhold state revenues from gambling that Defendants' regulated competitors must pay.  The injury is not one that consumers can reasonably avoid, especially if a person, a person's spouse, or a person's dependent struggles with gambling addiction.

76.     Defendants' conduct at issue here is also tethered to underlying statutes and regulations prohibiting unlicensed and unregulated gambling, and violates the policy or spirit of antitrust law.

77.     Defendants' conduct also is unfair to the extent that Defendants exploit perceived loopholes in gambling laws that Defendants believe allow them to portray its gambling operation as a "sweepstakes" while in fact offering conventional—and highly regulated—gambling games like slots and poker.

78.    Defendants' conduct also constitutes an unfair business practice because Defendants target and exploit vulnerable and addicted players while falsely denying that Chumba Casino involves gambling.

79.    Defendants' conduct also falls within the ambit of the "unlawful prong of the UCL.

80.    California Penal Code 337j(a) makes it "unlawful for any person … either solely or in conjunction with others," to (1) "deal, operate, carry on, conduct, maintain, or expose for play in this state any controlled game"; (2) "to receive, directly or indirectly, any compensation … or share of the revenue, for keeping, running, or carrying on any controlled game"; or (3) "distribute … any gambling equipment within the boundaries of this state."

81.    "Controlled games" include poker and any other game played with cards, and "any game of chance."  Cal. Penal Code § 337j(e).  The definition of a "controlled game" also includes specifically enumerated exceptions, which do not include purported sweepstakes.  *Id.* at § 337j(e)(2).

82.    Defendants work "in conjunction with others" to operate the illegal gambling website ChumbaCasino.com and to distribute gambling equipment (i.e., the website) within California, and their revenue is derived from the gambling proceeds.

83.    California Penal Code § 337j(b) makes it "unlawful for any person to knowingly permit any controlled game to be conducted, operated, dealt, or carried on in any … premises that he or she owns or leases, in whole or in part," without a licenses.  Defendants violate this law by permitting gambling on their website (i.e., the "premises"), which they own or lease, in whole or in part.

84.    California Penal Code § 322 provides that "[e]very person who aids or assists, either by printing, writing, advertising, publishing, or otherwise in setting up, managing, or drawing any lottery, or in selling or disposing of any ticket, chance, or share therein, is guilty of a misdemeanor."  "A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon

1  any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or

2  chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be

3  known."  Cal. Penal Code § 319.  Defendants "aid or assist" in "advertising, publishing, or

4  otherwise setting up [or] managing a lottery governed by Sections 319 and 322.

5      85.   California Penal Code § 337a(a)(3) makes it unlawful to "receive[], hold[], or

6  forward[], or purport[] or pretend[] to receive[], hold[], or forward[] … in any manner whatsoever,

7  any money, thing or consideration of value … staked, pledged, bet or wagered … upon the result,

8  or purported result, of any … contest … [or] any lot, chance, casualty, unknown or contingent

9  event whatsoever."  The term "'thing of value' is defined to be any money, coin, currency, check,

10  chip, allowance, token, credit, merchandise, property, or any representative of value."  *Id.* at

11  § 330.2.  Both Defendants receive, hold, or forward gambling wages, Gold Coins, and Sweeps

12  Coins, in connection with the operation of ChumbaCasino.com, and are described as "Payment

13  Administration Agents" in the Terms of Service.

14      86.   California Penal Code § 330b makes it "unlawful for any person" to, among other

15  things, "possess" or "permit the operation" of any slot machine.  Defendants' slot machine games

16  are illegal slot machines as defined by Cal. Penal Code §§ 330b(d) and 330.1 because, among other

17  reasons, when a player purchases and wagers virtual casino chips, a winning spin affords the player

18  an "additional chance or right to use" the game.

19      87.   Defendants conduct also is unlawful under the CLRA, as alleged below.

20      88.   No plain, adequate, and complete remedy for Defendants' conduct exists at law.

21  Consequently, the California Class is entitled to an equitable remedy under the UCL.

22      89.   Plaintiff seeks public injunctive relief under the UCL.  The primary purpose of this

23  relief is to prohibit unlawful acts that threaten future injury to the general public as a whole, as

24  opposed to a particular class of persons.

25

26

27

28

**SECOND CAUSE OF ACTION**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

90.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

91.     Each Defendants is a "person" as defined by California Civil Code § 1761(c).

92.     Plaintiff is a "consumer" within the meaning of California Civil Code § 1761(d).

93.     Defendants violated California Civil Code § 1770(a)(14) because its conduct has the tendency or capacity to deceive or confuse customers into believing that that the gambling transactions confer or involve certain rights, remedies, or obligations (i.e., the right to recover winnings and the obligation to pay for losses), when in fact any such rights, remedies, or obligations are prohibited by law.

94.     Defendants violated California Civil Code § 1770(a)(17) by representing that the website users will receive an economic benefit (in the form of gambling winnings), when the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction (i.e., winning the bet).

95.     Defendants violated California Civil Code § 1770(a)(17) by inserting and/or relying on unconscionable contract provisions.  The entire agreement is unconscionable because it is unlawful and void *ab initio*.  The agreement also contains provisions intended to obstruct the Plaintiff's ability to seek public injunctive relief and purporting to waive fundamental and non-waivable rights under California law.  The agreement also violates § 1770(a)(17) by purporting to force plaintiffs to sue in Malta, while applying Delaware law.

96.     Defendants' unfair and deceptive acts or practices occurred in a transaction intended resulting in the sale of goods or services to a consumer.

97.     Defendants acted with knowledge and intent.

98.     As a result of Defendants' misconduct, Plaintiff has suffered monetary harm.

99.     Plaintiff seeks public injunctive relief under the CLRA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the general public, pray:

A.     For public injunctive relief shutting down the operation of Defendant's unlawful gambling website ChumbaCasino.com.

B.     An award of fees and costs, to the extent permissible under the CLRA or any other statute.

C.     For such other and further relief as the Court may deem proper.

Dated: December 16, 2024          **SMITH KRIVOSHEY, PC**

By: _____
　　　　　　Joel Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (SBN 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (SBN 295032)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration, Civil Code § 1780(d)</u>**

I, Joel D. Smith, declare as follows:

1.      I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for the Plaintiff in the above-captioned action.

3.      I submit this declaration in support of the Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Complaint has been filed in the proper place for trial of this action because: (a) my understanding is that Defendant regularly transacts business in this County, and (b) this action is commenced in the county where the transaction between Plaintiff and Defendants occurred.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on December 16, 2024 in Danielson, CT.

By:   /s/ Joel D. Smith
Joel D. Smith